**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kenneth L. ORR, Defendant and Appellant.**

**Crim. No. 1073.**

Supreme Court of North Dakota.

Oct. 1, 1985.

John E. Greenwood, Asst. State's Atty., Jamestown, for plaintiff and appellee.

Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for defendant and appellant; argued by Thomas E. Merrick, Jamestown.

LEVINE, Justice.

Kenneth L. Orr appeals his sentence for driving under the influence in violation of North Dakota Century Code § 39–08–01. We reverse and remand.

On July 6, 1984 Orr was charged with driving under the influence of intoxicating liquor (DUI). The State subsequently moved to amend the complaint to allege that this was Orr's second DUI offense within five years and that if convicted he should be sentenced as a second DUI offender pursuant to NDCC § 39–08–01(5)(b). Attached to the motion was a certified copy of a Jamestown Municipal Court report sheet which declared that Orr had pleaded guilty to a DUI charge on December 8, 1982, received a fine and a five-day suspended jail sentence.

Orr unsuccessfully resisted the State's motion, claiming the municipal court judgment could not be used as proof of his previous DUI conviction because he had not been represented by a lawyer in that proceeding and there was no evidence on the record that he had been advised of, and waived, his right to counsel.

Following a bench trial Orr was found guilty of DUI and sentenced to four days in jail (26 days suspended) to be served consecutively, given a $500.00 fine and ordered to submit to alcohol evaluation. Section 39–08–01(5)(b), NDCC, provides that the sentence for a second DUI conviction within five years must include at least four days' imprisonment, of which 48 hours must be served consecutively, or ten days' community service, at least a $500.00 fine and referral for addiction evaluation.

Orr contends that his municipal court DUI conviction, which was based upon a guilty plea, could not be used to enhance his punishment for the subsequent DUI conviction pursuant to NDCC § 39–08–01(5)(b) when there was no proof that he was advised of, and waived, his right to counsel before pleading guilty to the earlier DUI charge. Consequently, Orr argues that he was sentenced as a second offender in violation of his rights secured by the sixth and fourteenth amendments to the United States Constitution and article I, § 12 of the North Dakota Constitution.

### 1. First or Second Offense?

At the outset, we note that the trial court failed to articulate its reasons for imposing the particular sentence, in spite of the mandate of NDCC § 12.1–32–02(5), which provides:

> "All sentences imposed shall be accompanied by a written statement by the court setting forth the reasons for imposing the particular sentence. The statement shall become part of the record of the case."

Such a statement would have obviated our need to question whether Orr was sentenced as a first offender or as a second. If Orr were sentenced as a first offender, the issue he raises is a non-issue since there would be no enhancement by virtue of a prior conviction. If, on the other hand, his first conviction were the impetus for the trial court's sentence of incarceration then the issue raised by Orr is properly before us. The mere fact that four days' imprisonment was imposed does not by itself provide the answer, because that sentence could have been imposed for either a first or second offense under §§ 39–08–01(3) and 12.1–32–01(6).

■ In spite of the absence of a concise explanation for the sentence by the trial court,[1] we are able to glean from the record a basis to conclude that the trial court did sentence Orr to jail only because he was a second offender. The complaint was amended, with leave of court, and over

---

1. Because the issue was not raised, the effect of noncompliance with the statutory requirement remains undecided. *City of Riverside v. Smuda,* 339 N.W.2d 768 (N.D.1983).

Orr's objection, to allege a second offense and to request sentencing as a second offender. It is not disputed that first offenders in Stutsman County are not sentenced to jail. That the sentence imposed is four days' incarceration and a $500.00 fine, which is the minimum penalty for a second conviction, is, we believe, more than mere coincidence. Finally, the trial court indicated in response to Orr's renewed objection to use of the prior conviction to enhance punishment for his second offense, that he had already decided against Orr's position:

> "Well, I made the ruling [*i.e.*, prior conviction was valid for purpose of enhancing sentence for subsequent conviction] *and I'm going to stand by it* and Mr. Orr I sentence you to pay the fine of $500.00, thirty days in jail, twenty-six suspended...." [Emphasis added.]

Taken as a whole, the record satisfies us that Orr was sentenced to incarceration solely because he was a second offender.

### 2. *Waiver*

■ One accused in a criminal proceeding has the right to the assistance of counsel and the court must inform an accused of that right. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Heasley*, 180 N.W.2d 242 (N.D.1970); U.S. Const. Amend. VI and XIV; N.D. Const. art. I, § 12; NDRCrimP 5, 11, and 44.

There was nothing in the municipal court record to indicate that Orr had been advised of, and waived, his right to counsel prior to pleading guilty. Orr does not recall if he was advised of his right to counsel but states that he was not represented by an attorney.

The county court, relying on the presumptions of NDCC § 31–11–03(14–17), presumed that the municipal judge duly informed Orr of his right to counsel and that Orr validly waived that right. It concluded, therefore, that the prior conviction could be used for enhancement purposes.

■ The trial court erred in presuming that Orr had validly waived that right when the record did not affirmatively indicate such a waiver.[2] *State v. Gustafson*, 278 N.W.2d 358 (N.D.1979); *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). Such a presumption is impermissible because waiver has particularly far-reaching effects in the context of guilty pleas. Insofar as a guilty plea is itself a conviction it constitutes a relinquishment of three important constitutional rights: the privilege against self-incrimination, the right to trial by jury, and the right of confrontation. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). We cannot presume a waiver of these three important constitutional rights from a silent record. *State v. Hagemann*, 326 N.W.2d 861 (N.D.1982); *see also State v. Nordstrom*, 331 N.W.2d 901 (Minn.1983). Consequently, the county

---

**2.** The record is silent because municipal courts are not courts of record. NDCC § 27–01–01. However, NDRCrimP 11(f) requires that a verbatim record be made of the proceedings at which a defendant enters a plea. Rule 11(f) must be followed by municipal courts so far as applicable. NDRCrimP 1. The apparent conflict between § 27–01–01 and Rule 11(f) was considered by the Rules Committee but no action was taken to resolve the conflict. *See* Minutes of Rules Committee, November 18–20, 1971, p. 37. Nevertheless, in response to the 1983 amendments to ch. 39–08 the North Dakota Municipal Benchbook (1984) was made available to municipal courts for use as a procedural guide. The Benchbook states that a record of the proceedings where a guilty plea is entered must be made pursuant to Rule 11(f) and specif-

ically refers to the impact of *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). (For our discussion of *Baldasar* see *infra.*) The Benchbook also includes a waiver of right to counsel form to be used by municipal courts. *See* Benchbook pp. 32–33, 45. The precursor to the Benchbook also gave similar instructions to make a record of guilty pleas and contained a suggested waiver of rights form. *See* North Dakota Court Manual, pp. III–79–80, III–84, Appendix (1982). The possibility of making municipal courts ones of record is being studied. *See* Report and Recommendations of the Municipal Court Study Subcommittee of the Judicial Planning Committee of the North Dakota Judicial System, September 25, 1984. *See also* Minutes, Municipal Court Study Committee, July 16, 1985.

court erred in ruling Orr waived his right to counsel.

### 3. *Enhancement*

Having determined that it has not been shown that Orr waived his right to counsel, our next inquiry goes to the effect of Orr's uncounseled DUI conviction on the present case. The issue is whether or not Orr may be sentenced to mandatory imprisonment as a second DUI offender pursuant to NDCC § 39–08–01(5)(b) when his first DUI conviction resulted from an uncounseled guilty plea without evidence of waiver of counsel.

Orr argues that *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), a plurality per curiam opinion, prohibits use of his first ordinance conviction to enhance his present sentence to include imprisonment. The State counters that *Baldasar* is not binding precedent because it forbids using a prior uncounseled conviction only when that conviction was punishable by over six months' imprisonment. We agree that because Orr's first DUI conviction was not punishable by over six months' incarceration, *Baldasar* does not preclude its use to enhance Orr's present sentence. The State also contends that *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), controls and validates Orr's enhanced punishment. We disagree. Resolution of the parties' arguments requires careful analysis of *Baldasar* and *Lewis*.

In *Baldasar*, the petitioner was convicted of a felony and sentenced to a one-to-three-year prison term. At trial, his counsel objected unsuccessfully to evidence establishing an earlier misdemeanor conviction, without counsel or valid waiver of counsel and for which Baldasar received no imprisonment. Under Illinois law, the first conviction enhanced the subsequent offense from a misdemeanor punishable by fine and imprisonment for up to one year to a felony punishable by fine and imprisonment for up to three years. The Supreme Court reversed the conviction in a concurrence by Justice Blackmun and two concurrences written by Justices Stewart and Marshall, joined by Justices Brennan and Stevens.[3] There was no majority rationale for the result.

We follow the Supreme Court's direction in interpreting the holding of a plurality decision.

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ....' ...." *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977).

We thus review the respective positions of the assenting five Justices in *Baldasar* contained within the three concurrences in order to discern the narrowest grounds of their divergent positions.

In Justice Blackmun's concurrence he maintained his dissenting position in *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979),[4] repeating his bright-line test. That test requires counsel to be appointed when an indigent defendant is charged with a non-petty offense or is actually sentenced to a prison term. Because Baldasar's first conviction was for an offense punishable by more than six months' imprisonment, and because counsel was not appointed or waived, Baldasar's first conviction was invalid and could not be used to support enhancement.

Justice Marshall wrote that even if, under *Scott*, actual imprisonment determines the constitutional right to counsel, the de-

---

**3.** Justice Powell, writing for the four dissenters, argued that a constitutionally valid conviction is valid for all purposes, including enhancement.

**4.** *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) held that absent a valid waiver, no person may be imprisoned for any offense, misdemeanor or felony, unless he were represented by counsel. Thus, under *Scott*, an uncounseled conviction is valid so long as the accused is not actually sentenced to a term of incarceration.

fendant's "prior uncounseled misdemeanor conviction could not be used collaterally to impose an increased term of imprisonment upon a subsequent conviction." 446 U.S. at 226, 100 S.Ct. at 1587 (Marshall, J., concurring). He reasoned that a valid conviction for a subsequent offense does not render a prior uncounseled conviction more reliable and a conviction that could not be used directly to impose a prison term logically could not be used indirectly to enhance imprisonment under a recidivist statute. His analysis was based on the rationale underlying the right to counsel: an indigent's fundamental right to a fair trial depends upon the appointment of counsel.

Justice Stewart stated that imposing an increased prison term solely because of a prior conviction violated the rule of *Scott*. 446 U.S. at 224, 100 S.Ct. at 1586 (Stewart, J., concurring).

The opinions of Justices Marshall and Stewart would, we believe, preclude the use of Orr's first conviction for enhancement purposes. They focused on the increased imprisonment for the subsequent offense and gave no regard to the authorized penalty for the first offense. They share the view that an unreliable prior conviction, regardless of the length of potential imprisonment, cannot be used for enhancement.

However, the fifth and deciding vote is Justice Blackmun's. Justice Blackmun's bright-line test would not preclude the use of Orr's prior conviction for enhancement purposes because the penalty for Orr's first conviction was not more than six months' imprisonment and Orr was not actually imprisoned. Thus, under Justice Blackmun's view, Orr's first conviction was valid and therefore available for enhancement purposes.

■ It is our view that, on its narrowest grounds, *Baldasar* held only that an uncounseled misdemeanor conviction punishable by more than six months' imprisonment cannot under the sixth amendment be used to increase a prison term under an enhanced penalty provision.

■ Orr was neither imprisoned nor was his prior offense punishable by more than six months' imprisonment. Therefore we conclude that *Baldasar* does not preclude the subsequent use of Orr's prior uncounseled ordinance conviction under an enhanced penalty provision.

The State further argues that this case is controlled by *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980).

In *Lewis*, the court held a defendant's prior uncounseled felony conviction, even though invalid under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), may support a subsequent conviction under the Omnibus Crime Control and Safe Street Act of 1968. 18 USC § 1202(a)(1) (1976). The Act prohibits a convicted felon from receiving, possessing, or transporting any firearm. The defendant, without the assistance of counsel, had been convicted in 1961 of a felony and thereafter was tried and convicted of violating 18 USC § 1202(a)(1). The Court, after examining § 1202(a)(1) and its legislative history, found nothing to indicate that Congress intended to allow a defendant to challenge the validity of a prior conviction as a defense to prosecution under § 1202(a)(1). *Lewis* at 445 U.S. 62, 100 S.Ct. 919. Rather, the Court concluded that Congress could rationally determine that any felony conviction, even an allegedly invalid one, is a sufficient basis for prohibiting the possession of a firearm. *Lewis* at 445 U.S. 66–67, 100 S.Ct. 921–22.

The Court distinguished *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) (uncounseled conviction cannot be used for enhancement of punishment under a recidivist statute); *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (uncounseled conviction cannot be considered by court in sentencing defendant after later conviction); and *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) (uncounseled conviction cannot be used to impeach general credibility of defendant), on the ground that in each of those cases the

subsequent conviction or sentence violated the sixth amendment because it depended upon the reliability of the prior uncounseled conviction. In *Lewis*, the Court concluded the federal gun laws "focus not on reliability, but on the mere fact of conviction ... in order to keep firearms away from potentially dangerous persons." *Lewis* 445 U.S. at 67, 100 S.Ct. at 921–22. Thus, the Court reasoned that imprisonment for violating § 1202(a)(1) does not "enhance punishment" on account of the prior conviction, but rather enforces an "essentially civil disability through a criminal sanction." *Id.*

The State asserts analogously that NDCC § 39–08–01(5) does not enhance punishment due to a past DUI conviction. It argues the focus of the increased punishment provided by § 39–08–01(5) is not on the reliability of the previous uncounseled conviction, but on the mere fact of conviction.

■ We disagree. Section 39–08–01(5) is distinguishable from the federal gun statute. Here mandatory incarceration upon a second offense does not enforce an "essentially civil disability." A first DUI conviction may result in incarceration and is therefore not an essentially civil disability. NDCC § 12.1–32–01(6). Rather, § 39–08–01(5) increases punishment for repeat offenders simply because a second, third or fourth offense is considered a more serious crime requiring harsher punishment. Consequently, § 39–08–01(5) is clearly an enhancement statute that necessarily focuses on the reliability of the first conviction, and not on the mere fact of its occurrence. It is therefore distinguishable from the federal statute under consideration in *Lewis*. [5]

The federal statute is further distinguishable in that it allows a convicted felon to administratively remove his disability and thus lawfully possess a firearm. Section 39–08–01 does not have any similar

procedure permitting a DUI offender to expunge or limit the effect of a DUI conviction.

4. *Article I, Section 12, N.D. Const.*

Orr also asserts his sentence violates art. I, § 12, of the North Dakota Constitution.

Article I, § 12, N.D. Const., provides that the accused shall have the right "to appear and defend in person and with counsel." That language differs from the sixth amendment which provides "The accused shall enjoy the right to ... have the Assistance of Counsel for his defense."

Section 12 of the North Dakota Constitution is a guarantee that one accused of a crime is entitled to counsel. *State v. Whiteman*, 67 N.W.2d 599 (N.D.1954). This right has long been zealously guarded not only by the courts of this State, *see, e.g., State v. Heasley*, 180 N.W.2d 242 (N.D.1970); *State v. Whiteman*, *supra; State v. O'Neill*, 117 N.W.2d 857 (N.D. 1962), *cert. den.*, 373 U.S. 939, 83 S.Ct. 1544, 10 L.Ed.2d 694 (1963), but also by the Legislature as far back as 1895. *See, e.g.,* North Dakota Revised Code 1895 § 7749 (in all criminal prosecutions accused shall have the right to defend with counsel) R.C.1895 § 8075 (defendant at arraignment must be informed of right to counsel and counsel must be appointed if desired); R.C.1895 § 8407 (indigent criminal defendant entitled to court-appointed attorney in district court); R.C.1895 § 6607 (county court of increased jurisdiction to appoint counsel for indigent defendant in misdemeanor case). Prior to statehood the right to counsel was acknowledged by the territorial laws. *See* Revised Code of the Territory of Dakota 1877, Code of Criminal Procedure § 11(2); Compiled Laws of the Territory of Dakota 1887 § 7035(2).

■ We have traditionally recognized that the right to counsel under our Consti-

---

**5.** The cases cited by the State in support of its argument that § 39–08–01(5) is a *"Lewis* -type" statute are also distinguishable. All those cases purport to involve enforcement of an "essentially civil disability" by criminal sanction and thus were deemed to be controlled by *Lewis*. *See*

*Schindler v. Clerk of Circuit Court*, 715 F.2d 341 (7 Cir.1983), *cert. den.*, — U.S. —, 104 S.Ct. 1419, 79 L.Ed.2d 745 (1984); *State v. O'Neill*, 473 A.2d 415 (Me.1984); *State v. Novak*, 107 Wis.2d 31, 318 N.W.2d 364 (1982).

tution is fundamental because it enables an accused to procure a fair trial. *State v. Whiteman, supra; State v. Heasley, supra.* This special regard for the intrinsic value of § 12 has been exercised independently of any compulsion under federal law or the federal constitution.[6] *See, e.g., State v. Heasley, supra; State v. Whiteman, supra; State v. O'Neill, supra.* Consequently, we must consider whether § 12 permits the use of an uncounseled conviction to enhance a term of imprisonment for a subsequent offense.

Underlying our judicial constitutional interpretation that § 12 provides the key to a fair trial is the belief that counsel will, if not guarantee, then at least facilitate the optimum outcome for a defendant in a given case. Uncounseled convictions, thus, are to be rightly regarded with skepticism. They are unreliable.[7] *Scott, supra; Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Tucker, supra; Burgett, supra.* We agree that the denial of the right to counsel impeaches "the very integrity of the fact-finding process," *Linkletter v. Walker,* 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965), and that the right to counsel is "fundamental and essential to a fair trial." *Gideon v. Wainwright, supra.* Long before *Linkletter* and *Gideon* our own state courts recognized the substance of this principle when they considered issues of waiver of counsel. *See, e.g., State v. Throndson,* 49 N.D. 348, 191 N.W. 628 (1922); *State v. Thompson,* 56 N.D. 716, 219 N.W. 218 (1928).

■ We are guided by such federal cases as *Argersinger, supra; Scott, supra; Tucker, supra;* and *Burgett, supra,* which recognize in unequivocal fashion that an uncounseled conviction is too unreliable to support the sanction of imprisonment. We believe that whether the imprisonment is a result of a first conviction, as in *Scott,* or because of a conviction for a subsequent offense, as in Orr's case, makes no difference. Merely because Orr was validly convicted of a second offense does not confer reliability on his earlier uncounseled conviction. Furthermore, because the defect in Orr's prior conviction was the denial of counsel, he would, in effect, "suffer anew" the deprivation of his right to counsel if he were subsequently imprisoned solely because of the previous uncounseled conviction. *See Burgett, supra.* To allow an accused's punishment to be enhanced to include imprisonment solely because of a prior uncounseled conviction violates the dictate of art. I, § 12 that one accused of a crime is entitled to counsel.

We hold that absent a valid waiver of the right to counsel the resulting conviction cannot, under art. I, § 12, N.D. Const., be

---

6. We do not believe that the Explanatory Note to Rule 44, NDRCrimP, which states that counsel would be appointed only when required under the holding of the United States Supreme Court in *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), indicates any intention that in North Dakota the right to counsel guaranteed by § 12 is to be limited by or to the holdings of the United States Supreme Court. There is no evidence in the minutes of the Rules Committee, or otherwise, to demonstrate such intent. *See* Minutes of Rules Committee, December 11–15, 1972, pp. 44–48. Furthermore, whereas we have adopted, insofar as practical, the Federal Rules of Criminal Procedure as our own, and granted great weight to the federal courts' interpretation of those rules, *State v. Morris,* 316 N.W.2d 80 (N.D.1982), there is no such analogous policy or practice with regard to the relationship between the sixth amendment and § 12. We have often recognized that our constitution may afford broader

rights than those granted under the federal constitution. *City of Bismarck v. Altevogt,* 353 N.W.2d 760 (N.D.1984). *See, e.g., State v. Nordquist,* 309 N.W.2d 109 (N.D.1981); *State v. Lewis,* 291 N.W.2d 735 (N.D.1980); *Johnson v. Hassett,* 217 N.W.2d 771 (N.D.1974), as has the United States Supreme Court. *California v. Ramos,* 459 U.S. 1301, 103 S.Ct. 285, 74 L.Ed.2d 19 (1982) (states free to provide greater protection in their criminal justice system than federal constitution requires).

7. That uncounseled convictions often do not accurately reflect guilt or innocence has been long recognized: "Left without the aid of counsel [an accused] may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible." *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). *See also Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

used to enhance a term of imprisonment for a subsequent offense.

■ As a practical consequence of our holding, municipal courts (and all others) must obtain a valid waiver of counsel on the record or afford a nonindigent defendant the opportunity to retain counsel, or appoint counsel for an indigent DUI defendant[8] regardless of the penalty to be imposed, if enhancement of punishment for a subsequent conviction is not to be precluded.[9] While this may constitute an economic burden, our constitution must prevail. *See Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (there can be no equal justice where the kind of trial a person gets depends on the amount of money he has); *Watson v. City of Memphis, Tenn.*, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963) (vindication of constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them). We recognize the concentrated legislative effort to deter those who endanger us all by their drinking and driving. We believe that promotion of such a strong public policy merits the necessary allocation of public funds to pass constitutional muster. Of course, not all DUI defendants are indigent and not all DUI violations will recur. For those that are and do, we can only ascribe to the principle that our constitution applies to ever-changing needs and problems facing society and implementation of its edicts may often require varying and innovative adaptations.

### 5. Burden of Proof

The final issue to be resolved is the allocation of the burden to prove the validity of a prior uncounseled conviction to justify its use to enhance punishment, when the record is silent on waiver.

In *Burgett v. Texas, supra*, the Supreme Court held that a prior felony conviction was presumed void and could not be used to enhance punishment, where the record did not indicate that the defendant had, or waived, counsel. Because of an accused's constitutional right to counsel in a felony case, the record's failure to affirmatively show counsel or waiver was fatal. The same reasoning applies to this case where we have held that an accused is constitutionally entitled to counsel in a misdemeanor case if the resulting conviction is sought to be used for enhancement to include imprisonment. Here, the silent record is insufficient to overcome the presumption that the prior uncounseled conviction was void for enhancement purposes.

■ Therefore, the State, in seeking to imprison Orr as a second offender based on his earlier presumptively void uncounseled conviction, had the burden to overcome this presumption once Orr raised the issue in a pretrial proceeding by resisting the motion to amend.[10] To meet its burden the State

---

**8.** The record does not indicate whether or not Orr was indigent. Assuming he was not, he nevertheless had the right to retain counsel at his own expense or waive that right.

**9.** We note Justice Stewart's observation in a footnote to *Baldasar* that the prohibition against using an uncounseled prior conviction for enhancement of punishment was anticipated by the State in its brief in *Scott:*

"When prosecuting an offense the prosecutor knows that by not requesting that counsel be appointed for defendant, *he will be precluded from enhancing subsequent offenses.* To the degree that the charging of offenses involves a great deal of prosecutorial discretion and selection, the decision to pursue conviction with only limited use comes within proper scope of that discretion." *Baldasar v.*

*Illinois,* 446 U.S. 223, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). [Emphasis in original.]

**10.** Orr's objection to the State's motion to amend was sufficient to raise the enhancement issue even though he did not specifically state that he was not informed of, and did not waive, his right to counsel. We do not believe that a defendant should be precluded from challenging the use of a prior conviction for purposes of enhancement solely because he cannot affirmatively state that he did not waive his right to counsel. The difficulty in recalling exactly what was said in prior proceedings is one of the most compelling reasons for making a record of guilty pleas. A record "forestalls the spin-off of collateral proceedings that seek to probe murky memories." *Boykin v. Alabama,* 395 U.S. 238, 246, 89 S.Ct. 1709, 1713, 23 L.Ed.2d 274 (1969). A defendant's "murky memory" is not surpris-

could rely on parol or other evidence that Orr waived his right to counsel.[11] This the State has failed to do.

Accordingly, we reverse and remand with instruction that Orr be sentenced without regard to the prior municipal court DUI conviction.

MESCHKE and GIERKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

For reasons stated later herein, I concur in the result reached by the majority opinion. I agree with much of what is stated therein. I write specially to express my doubt concerning the particular posture of this case in which the defendant does not even allege he was not informed of his right to counsel at the time of his plea of guilty in municipal court but only alleges he does not remember whether or not he was so informed. The majority opinion concludes that this is sufficient to cause the State to prove the validity of the prior uncounseled conviction. Footnotes 10 and 11 of the majority opinion analogize this to the burden the State has when it seeks to introduce evidence obtained by a warrantless search and seizure because warrantless searches and seizures are presumptively unconstitutional. But the problem with such an analogy is that the first conviction, uncounseled though it was, is not presumptively unconstitutional. Perhaps these statements reflect my difficulty with the concept that a conviction which is unquestionably valid in and of itself is invalid for the purpose of enhancement.

Secondly, I am not convinced there is a good reason for concluding that *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), is not applicable. The rationale that the law involved in *Lewis* did not enhance punishment as a result of a prior conviction but rather enforced an essentially civil disability through a criminal sanction raises a serious question in my mind as to the soundness of the distinction. And, if there is such a distinction, it appears to me that our law concerning drunk drivers may very well serve the same purpose, i.e., it does not enhance punishment on account of the prior conviction but rather enforces an "essentially civil disability through a criminal sanction"—keeping the drunk driver off the road.

Finally, I am not convinced Article I, Section 12, of the North Dakota Constitution provides any greater protection than does the Sixth Amendment to the United States Constitution. Although the wording in the North Dakota Constitution is somewhat different, the significance of that difference escapes me and is not explained by the majority opinion. I agree with the majority opinion the history of our *statutory* law is that defendants in county and district court were entitled to counsel. Whether those provisions were equally applicable to municipal court may be open to question. But, as discussed below, I would reserve for another day the question of whether or not our constitutional provision provides greater protection than does the Sixth Amendment. Statements in the majority opinion, including those at footnote 6,

ing given the passage of time and the ordinary citizen's unfamiliarity with court procedure. Therefore, a defendant need only challenge the use of a prior uncounseled conviction for enhancement purposes to properly raise this issue.

**11.** The State has a similar burden when it seeks to introduce evidence obtained by a warrantless search and seizure. Because warrantless searches and seizures are presumptively unconstitutional, the State has the burden to overcome the presumption by proving an exception to the warrant requirement. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *State v. Abrahamson*, 328 N.W.2d 213 (N.D.1982); *see, e.g., State v. Emens*, 649 F.2d

653 (9 Cir.1983). This case is analogous because in both situations the State seeks to introduce evidence which is presumed to have been obtained unconstitutionally. In the fourth amendment context, the State seeks to use evidence acquired without a warrant and in this case the State endeavors, in order to justify enhancement, to introduce evidence of a conviction obtained when Orr was not represented by counsel. Therefore, in both situations it is presumed that the evidence was acquired by violating the defendant's constitutional rights and thus the State bears the burden to prove that the evidence was obtained constitutionally.

may well cast doubt upon the validity of the initial conviction in municipal court for its own purpose without the issue of enhancement, because they seem to imply that the comments to Rule 44, N.D.R. Crim.P., relative to *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), do not limit the right to counsel under Article I, Section 12, of the North Dakota Constitution. If, indeed, that is the law, it would appear that the uncounseled plea of guilty, without any indication on the record of a knowing and valid waiver of the right to counsel, would make the conviction invalid under our Constitution despite the fact there was no imprisonment for the conviction, contrary to the holding in *Argersinger.*

After having written the above, perhaps I should dissent rather than concur specially. However, I agree with the majority that uncounseled convictions are not always reliable.[1] I further agree with the majority that, as a matter of policy, the record in municipal court as well as other courts should reflect that a defendant was advised of his right to counsel (and the appointment of counsel in his behalf if he is indigent and entitled to appointment of counsel under *Argersinger*) and his voluntary waiver of counsel if, indeed, that happened. I believe a fair reading of Rule 11(f) of the North Dakota Rules of Criminal Procedure requires that result. We do not anticipate a question of constitutional law in advance of the necessity of deciding it and will not formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. See, e.g., *State v. King,* 355 N.W.2d 807 (N.D.1984). Thus I would leave for another day the significant constitutional issue reached by the majority opinion. The failure of the record of the previous conviction to reflect a valid waiver of right to counsel is sufficient reason to hold that the trial

court must disregard the previous conviction for purposes of enhancement. A rule such as Rule 11(f) should be considered substantive as well as procedural and we may choose to enforce the rule in such a prophylactic manner.

ERICKSTAD, C.J., concurs.

---

1. The unreliability of the uncounseled plea and subsequent conviction may well be due more to the fact that the ultimate consequences of the first conviction for driving while under the influence were not nearly so great in 1982, when the current law involving subsequent offenses was not so severe as it is now, than to the lack of legal counsel. There may well be persons who, under the former statutes, entered pleas of guilty after being advised by counsel that it would be less expensive to plead guilty and pay a fine than it would be to go to trial. Those persons cannot, of course, take advantage of today's decision.