2006 ND 49

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**Danny Ray HOVERSON, Defendant and Appellant.**

**No. 20050237.**

Supreme Court of North Dakota.

March 2, 2006.

Kelly Ann Dillon, Minot, N.D., for plaintiff and appellee.

Chad Rory McCabe, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Danny Hoverson appeals from an amended judgment of conviction for unlawful delivery of a controlled substance. We affirm, concluding: (1) the district court did not err in denying Hoverson's motion to dismiss based upon his claim of outrageous government conduct; (2) the court interpreted the law too narrowly when it refused to allow Hoverson to cross examine a witness on the underlying facts of a prior conviction, but the error was harmless; (3) the court did not abuse its discretion in refusing to allow Hoverson to cross examine a witness on specific instances of

conduct; and (4) the court did not substantially rely on an impermissible factor in sentencing Hoverson.

## I

[¶ 2] On October 24, 2003, law enforcement officers, including North Dakota Bureau of Criminal Investigations Agent Michael Marchus, set up a controlled purchase of methamphetamine from Hoverson. A confidential informant called Hoverson to set up the purchase. The confidential informant went to Hoverson's automotive shop to purchase the drugs. Upon completing the purchase, the confidential informant left the shop and met with law enforcement officers. The confidential informant gave the officers a small zip lock bag, decorated with dollar bill signs, containing .69 grams of methamphetamine. In June 2004, the State charged Hoverson, under N.D.C.C. § 19–03.1–23, with a Class A Felony for unlawful delivery of a controlled substance.

[¶ 3] Hoverson moved to dismiss the charge, arguing the State was guilty of outrageous conduct and asking the district court to exercise its inherent powers and dismiss the charge to protect the integrity of the judicial process. Hoverson claimed Agent Marchus was stalking and harassing him. In support of his motion, Hoverson offered evidence that between April 5, 2002 and September 8, 2004, Agent Marchus was involved in arresting Hoverson on eight separate occasions for driving under suspension. Four arrests occurred after Agent Marchus saw Hoverson driving around town. Two other arrests were the result of tips Agent Marchus received from members of the community. Agent Marchus also saw Hoverson driving on two other occasions while conducting surveillance on Hoverson's shop in connection with the drug investigation. On all eight occasions, Agent Marchus verified that Hoverson's license was suspended. During one encounter with Hoverson, Agent Marchus told Hoverson, "Now look at this face . . . you'll get to know it. You are my project boy." Another encounter occurred after Hoverson drove by Agent Marchus' home and made a comment about Agent Marchus' children. In response, Agent Marchus drove by Hoverson and said, "You drove by my place so I drove by your place." During the eighth arrest for driving under suspension, Hoverson accused Agent Marchus of harassing him and Agent Marchus said if he arrested Hoverson one more time he would get a free toaster or microwave. Agent Marchus admitted making all those statements to Hoverson.

[¶ 4] The district court denied Hoverson's motion to dismiss, concluding there was no outrageous government conduct because Agent Marchus was doing his duty as a law enforcement officer when he arrested Hoverson eight times for driving under suspension.

[¶ 5] A jury found Hoverson guilty of unlawful delivery of a controlled substance. After considering the sentencing factors in N.D.C.C. § 12.1–32–04, the district court sentenced Hoverson to ten years in the State Penitentiary, with four years suspended, and five years of supervised probation.

## II

[¶ 6] Hoverson argues the district court erred in not dismissing the prosecution based upon outrageous government conduct or the court's supervisory powers. Hoverson argues Agent Marchus' conduct, specifically his involvement in Hoverson's eight arrests and the comments he made to Hoverson, constituted harassment and stalking and deprived him of due process.

[¶ 7] An argument for outrageous government conduct usually arises in cases where government agents have

been involved in sting operations and is used in place of an entrapment defense. *See United States v. Kummer*, 15 F.3d 1455, 1459–60 (8th Cir.1994). The defense is reserved only for "the most intolerable government conduct." *United States v. Musslyn*, 865 F.2d 945, 947 (8th Cir.1989). "Government conduct is not outrageous simply because it may be somewhat offensive." *Id.* In order to succeed with an outrageous government conduct defense, the defendant must show that the government's conduct is "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). The level of outrageous conduct necessary to prove a due process violation is quite high and must shock the conscience of the court. *Id.* The outrageous government conduct argument is usually used in place of an entrapment defense and it is extremely rare to conclude that a defendant's due process rights were violated by the government's outrageous conduct. *United States v. Berg*, 178 F.3d 976, 980 (8th Cir.1999) (stating the United States Supreme Court and the Eighth Circuit Court of Appeals have yet to see a case where the government's conduct rose to that level). Whether the government's conduct is so outrageous that it bars prosecution is a question of law, fully reviewable on appeal. *Musslyn*, at 947.

■ [¶ 8] The government conduct in this case is not so outrageous that due process principles absolutely bar the government from invoking judicial processes to obtain a conviction. Agent Marchus was involved to some degree in all eight of Hoverson's prior arrests for driving under suspension. In each case, Hoverson was arrested on valid charges after Agent Marchus witnessed him engaging in illegal activity. Agent Marchus witnessed Hoverson violating the law and had a duty as a law enforcement officer to uphold and enforce the law by arresting Hoverson for the illegal acts. Although some of Agent Marchus' statements to Hoverson were inappropriate and unprofessional, we conclude Agent Marchus' conduct does not rise to the level of outrageous government conduct that would bar this prosecution. We reject Hoverson's due process claims.

III

[¶ 9] Hoverson argues he was severely prejudiced when the court refused to allow him to cross examine the confidential informant regarding the underlying details of the informant's prior theft conviction and other specific instances of conduct not resulting in a conviction.

[¶ 10] During trial, Hoverson asked the district court to allow him to cross examine the confidential informant regarding his past convictions, including a 1997 felony conviction for failure to appear and a 2004 theft of property conviction. The court admitted evidence of the felony conviction for failure to appear under N.D.R.Ev. 609(a)(i), concluding the probative value of the conviction was not substantially outweighed by the unfair prejudicial effect. The court also admitted evidence of the theft of property conviction under N.D.R.Ev. 609(a)(ii) after looking at the underlying facts of the conviction and concluding that it involved dishonesty or deceit. The court allowed Hoverson to cross-examine the informant about those convictions, but limited questioning to the name of the crime, the time and place of the conviction, and the punishment. Hoverson asked the court to allow him to cross examine the confidential informant regarding the underlying facts of the theft of property conviction under N.D.R.Ev. 608(b). The court denied Hoverson's request, concluding it circumvented the limitations imposed by Rule 609.

[¶ 11] Hoverson also sought to cross examine the confidential informant regarding allegations that the informant stole a car and broke into a house. Hoverson argued N.D.R.Ev. 608(b) allows questioning of specific instances of conduct not resulting in a conviction. The court denied Hoverson's requests, concluding the confidential informant could not be questioned about those instances of conduct because they were mere allegations and did not result in a conviction. The court also concluded that theft of a vehicle and breaking into a house were not probative of truthfulness or untruthfulness.

## A

[¶ 12] A witness's character for truthfulness may be impeached through cross examination regarding specific instances of conduct under N.D.R.Ev. 608(b), or through evidence of a conviction under N.D.R.Ev. 609(a).

[¶ 13] Rule 608(b), N.D.R.Ev., governs the admissibility of evidence of specific instances of conduct by a witness for impeachment purposes and states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. However, in the discretion of the court, if probative of truthfulness or untruthfulness, they may be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . .

A court has discretion to permit cross examination of a witness regarding specific instances of conduct under N.D.R.Ev. 608(b), and we review the court's decision under the abuse of discretion standard. *State v. Moran*, 474 N.W.2d 77, 78 (N.D. 1991). "A trial court abuses its discretion when it acts in an arbitrary, unreasonable,

or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law." *State v. Hernandez*, 2005 ND 214, ¶ 8, 707 N.W.2d 449.

[¶ 14] Rule 609(a), N.D.R.Ev., governs the admissibility of evidence of prior convictions for impeachment purposes and states:

> For the purpose of attacking the credibility of a witness, (i) evidence that a witness other than an accused has been convicted of a crime must be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime must be admitted if the court determines that the probative value of admitting that evidence outweighs its prejudicial effect to the accused; and (ii) evidence that any witness has been convicted of a crime must be admitted if it involved dishonesty or false statement, regardless of the punishment.

Under N.D.R.Ev. 609, a court has discretion to permit a party to impeach a witness through use of a felony conviction; however, if the court determines the conviction involves dishonesty or a false statement, the evidence is automatically admissible. *State v. Eugene*, 340 N.W.2d 18, 30–31 (N.D.1983).

[¶ 15] Hoverson argues the district court erred when it precluded him from cross examining the confidential informant regarding the underlying facts of the theft conviction. The court determined the confidential informant's prior theft conviction was admissible under N.D.R.Ev. 609(a)(ii), finding the theft involved dishonesty or deceit based upon the underlying facts of the crime. The court limited Hoverson's

questioning under N.D.R.Ev. 609(a)(ii) to the name, date, place, and punishment of the crime. Hoverson argues the district court abused its discretion in refusing to allow him to cross examine the confidential informant under N.D.R.Ev. 608(b) regarding the underlying facts of the theft conviction.

[¶ 16] Admissibility of a prior conviction under Rule 609(a)(ii) is limited to "crimes that bear directly upon the accused's propensity to testify truthfully, that is, 'crimes that involve some element of misrepresentation or other indicium of a propensity to lie and not to those crimes which, bad though they are, do not carry with them a tinge of falsification.'" *Eugene*, 340 N.W.2d at 32 (quoting *United States v. Ortega*, 561 F.2d 803, 805–06 (9th Cir.1977)). Although theft of property is not generally considered a crime of dishonesty or deceit, this Court has recognized that if a prior conviction is not included under Rule 609(a)(ii) by its definition, it may fall under the automatic admissibility provision if the underlying facts of the conviction involve dishonesty or a false statement. *Eugene*, 340 N.W.2d at 32.

[¶ 17] In this case, the district court concluded the confidential informant's prior theft of property conviction involved deceit or dishonesty, because he stole from his employer by writing checks and making charges in the name of the employer, knowing he was not authorized to make them. Hoverson adequately showed that the confidential informant's conviction for theft of property is a crime that qualifies for impeachment under Rule 609(a)(ii), and the court's decision to allow cross examination of the confidential informant regarding the theft of property conviction was appropriate. However, the court limited Hoverson's cross examination of the confidential informant regarding that prior theft of property conviction to

the name of the crime, the time and place of the conviction, and the punishment.

[¶ 18] This Court has previously held that the scope of the inquiry under Rule 609(a) is limited, " '[w]e are of the opinion that for the purpose of impeachment the most reasonable practice ... minimizing prejudice and distraction, is that beyond the name of the crime, the time and place of conviction, and the punishment, further details may not be inquired into.' " *Dugas v. Felton*, 249 N.W.2d 215, 217 (N.D.1976) (quoting McCormick, *Evidence* § 43, at 92–93 (1954)). Both Rules 608 and 609 are substantially derived from the corresponding federal rules and when interpreting them, it is appropriate to consider the federal courts' construction and interpretation of the Federal Rules, although we are not bound by their decisions. *Eugene*, 340 N.W.2d at 31.

[¶ 19] In some cases, federal courts have allowed cross examination of a witness under Fed.R.Evid. 608(b) regarding the facts underlying a conviction. *See, e.g., Elcock v. Kmart Corp.*, 233 F.3d 734, 751–754 (3d Cir.2000). In affirming a trial court's decision to allow cross examination under Fed.R.Evid. 608(b) of the underlying facts of a conviction to which a defendant pled guilty, the Sixth Circuit Court of Appeals explained:

> the statutory name of the offense to which a defendant pleads guilty is rarely informative, and often misinformative, about the nature of the offense to which guilt is acknowledged as the plea allocation. It is often appropriate, indeed necessary, if the fact finder is to be able to evaluate the significance of the prior conviction to the witness' credibility, that some details of the truthfulness-related offense be described.

*United States v. Hurst*, 951 F.2d 1490, 1501 (6th Cir.1991).

[¶ 20] That rationale is applicable to convictions where the court looks at the underlying facts and concludes evidence of a prior conviction is admissible under Rule 609(a)(ii). We conclude that under Rule 608(b), it is within the discretion of the court whether to allow cross examination of a witness regarding the underlying facts of a conviction if probative of truthfulness or untruthfulness. In cases where the court looks to the underlying facts to determine if the crime involves dishonesty or deceit, the facts underlying the conviction may explain the crime in a more accurate and complete manner and cross examination may be more probative of untruthfulness than a simple reference to the name of the crime.

[¶ 21] When exercising its discretion whether to allow this type of questioning under Rule 608(b), a court must also consider N.D.R.Ev. 403 and 611. *See Elcock*, 233 F.3d at 753. Rule 403 provides, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 611 requires the court "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

[¶ 22] The cases in which a court may allow cross examination of a witness regarding the underlying facts of a conviction are strictly limited to those cases where the court looks to the underlying facts of the conviction to determine whether evidence of the conviction is admissible under N.D.R.Ev. 609(a)(ii). Allowing cross examination of a witness under Rule 608(b), regarding the underlying facts of a Rule 609(a)(ii) conviction should be used cautiously. In these cases, the court should keep the questioning narrow and brief, limiting it to that which bears directly on the witness's truthfulness or untruthfulness. *See Hurst*, 951 F.2d at 1501. The court should consider issuing a cautionary instruction to the jury immediately following the questioning, informing the jury that the evidence bears solely on the issue of the witness's credibility and should be considered only for that purpose. *Id.* The court should also keep in mind that Rule 608 and 609 are exceptions to Rule 404, which is the general prohibition against the use of character evidence to prove conduct. N.D.R.Ev. 404(a)(3).

[¶ 23] Here, the district court properly admitted evidence of the confidential informant's theft of property conviction under Rule 609(a)(ii). Under Rule 608(b), the court had discretion to permit limited cross examination of the confidential informant on the specific acts of misconduct underlying his theft of property conviction to impeach his character for truthfulness. The court denied Hoverson's request to cross examine the confidential informant on the specific acts of misconduct underlying that conviction, concluding Hoverson's request circumvented the limitations imposed by Rule 609. We conclude the court misinterpreted the interplay between Rule 608 and 609 and therefore, erred as a matter of law when it failed to exercise its discretion in deciding whether to allow this type of cross examination. If the court had correctly applied the Rules, exercised its discretion and still not allowed cross examination, we would have reviewed the court's decision under the abuse of discretion standard. However, the court did not exercise its discretion, therefore, we must examine whether its error of law affected the substantial rights of Hoverson. We conclude the court's nar-

row application of Rule 608(b) was harmless.

[¶ 24] Under N.D.R.Crim.P. 52(a), "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The harmless error doctrine " 'serves a very useful purpose insofar as [it] blocks setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial.' " *Neder v. United States*, 527 U.S. 1, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). To determine if an error was harmless, we review the entire record and evaluate the error in the context of the circumstances in which it was made to determine if substantial injury occurred as a result and whether a different verdict would have resulted without the error. *See State v. Schimmel*, 409 N.W.2d 335, 339 (N.D. 1987).

[¶ 25] When initially discussing the confidential informant's theft of property conviction, the district court said:

> You are basically lying to your employer about what you are doing to his property and I think that is a crime that involves dishonesty and deceit. Some inquiry into that would be allowed. However, I don't want this to turn into a criminal trial for that so I think the State's point is well taken, that the only thing that we get into is the fact of the conviction and what the conviction was for.

The court could have reasonably concluded the underlying facts of the confidential informant's theft of property conviction were too prejudicial or would have resulted in a waste of time under N.D.R.Ev. 403. However, the court later concluded it did not have that discretion.

[¶ 26] Moreover, although the confidential informant was the prosecution's main witness and his credibility was an issue, abundant evidence was presented to the jury to judge his credibility. The confidential informant was cross examined regarding two prior convictions, one felony for failure to appear and one misdemeanor for theft of property. Hoverson cross examined the confidential informant regarding the name, date and place, and sentence for these convictions, including that the confidential informant served thirty days in jail and was required to pay $1,600 in restitution to the victim for the theft of property conviction. There was also opinion testimony from other people who knew the confidential informant and considered him untruthful. The jury heard a conversation between Hoverson and the confidential informant in which the confidential informant discussed having someone else get a liquor license in his or her name so the confidential informant could use the license. Law enforcement officers also testified that the confidential informant had been paid for his role in the controlled buy. The information presented to the jury was sufficient to determine the confidential informant's credibility, and additional information regarding the underlying facts of the theft of property conviction would have had very little impact on the jury's decision.

[¶ 27] We must also consider the strength of the evidence supporting the conviction. *See State v. Demery*, 331 N.W.2d 7, 12 (N.D.1983). Law enforcement officers testified about the procedure they used during the controlled buy. This included evidence of a thorough search of the confidential informant and his vehicle before the buy occurred and evidence that a wireless microphone was placed on the confidential informant so law enforcement could listen to the entire transaction. Officers followed the confidential informant's vehicle to Hoverson's automotive shop and they conducted surveillance of the area

while the purchase was taking place. Videotape shot from a helicopter showed the confidential informant arriving at the shop. During the controlled purchase, officers listened to and recorded the entire conversation between the confidential informant and Hoverson. After the purchase, the confidential informant left the building and drove to a nearby location to meet the officers, where his person and vehicle were searched a second time.

[¶ 28] Although the district court's application of Rule 608(b) to the confidential informant's theft of property conviction was too narrow, we believe allowing cross examination of the confidential informant regarding the underlying facts of his theft of property conviction would have had very little impact upon the jury's verdict. We therefore conclude the error was harmless and does not constitute grounds for reversing Hoverson's conviction.

## B

[¶ 29] Hoverson argues the district court erred in precluding him from cross examining the confidential informant under N.D.R.Ev. 608(b) about specific instances of conduct not resulting in conviction. The court concluded that mere allegations of a crime cannot be used to impeach a witness and that the crimes alleged to have been committed by the confidential informant were not probative of his truthfulness or untruthfulness. Hoverson argues the court abused its discretion.

[¶ 30] This Court has said, "it is well-established that mere accusations of a crime cannot be used to impeach the credibility of a witness." *State v. Hilsman*, 333 N.W.2d 411, 412 (N.D.1983) (citing *State v. Glavkee*, 138 N.W.2d 663 (N.D.1965); *United States v. Kirk*, 496 F.2d 947 (8th Cir.1974); and C.J.S. *Witnesses* § 515 (1957)). Although *Hilsman* was decided after adoption of the rules of evidence, the

cases it cited as authority for this "well-established" rule pre-date the Federal Rules of Evidence, adopted January 2, 1975, and the North Dakota Rules of Evidence, effective February 15, 1977.

[¶ 31] Prior to the adoption of N.D.R.Ev. 608(b), many courts endorsed a "conviction only" rule. 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 264, at 153 (2d ed.1994). Rule 608(b), Fed. R. Ev., was adopted to address when a witness's credibility can be impeached using specific instances of conduct not resulting in a conviction and changed the prior well-established rule. The Advisory Committee note to Rule 608(b) explains:

Effective cross-examination demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial. Consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time. Also, the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury, and that of Rule 611 bars harassment and undue embarrassment.

*See* Fed.R.Evid. 608 advisory committee's notes (remoteness in time was later deleted as being unnecessary and confusing). Rule 608, N.D.R.Ev., was adopted from Fed.R.Evid. 608, to allow impeachment of a witness's credibility through specific instances of conduct not resulting in a conviction, replacing the prior well-established legal precedent.

[¶ 32] Here, the district court concluded that mere allegations of a crime cannot be used to impeach a witness and that the allegations of breaking and entering and stealing a car were not probative of the

confidential informant's truthfulness or untruthfulness. To the extent the court refused to allow Hoverson to cross examine the confidential informant about specific instances of conduct not resulting in a conviction, the court's application of Rule 608(b) was too narrow. However, the district court also refused to allow Hoverson to cross examine the confidential informant regarding the specific instances of conduct because the court concluded they were not probative of the confidential informant's truthfulness or untruthfulness under Rule 608(b). This was a proper application of the rule and we conclude the court's decision was not arbitrary, unreasonable, or unconscionable, and the court therefore did not abuse its discretion.

## IV

[¶ 33] In challenging the district court's sentence, Hoverson argues the court relied on an impermissible factor of unproven conduct when the court considered evidence that Hoverson was engaged in an ongoing drug enterprise.

[¶ 34] Appellate review of criminal sentencing is limited to determining whether the court acted within the temporal limits prescribed by statute, or substantially relied on an impermissible factor. *State v. Bell,* 540 N.W.2d 599, 601 (N.D.1995). A court is allowed the widest range of discretion in sentencing, and we will vacate a sentencing decision only if the court " 'substantially relied on an impermissible factor in determining the severity of the sentence.' " *Id.* (quoting *State v. Cummings,* 386 N.W.2d 468, 469 (N.D. 1986)).

[¶ 35] This Court has held that a sentencing court may not rely upon an impermissible factor to determine the severity of the sentence, such as a pending criminal charge or a prior conviction resulting from an uncounseled guilty plea without evidence that the right to counsel was waived.

*State v. Orr,* 375 N.W.2d 171, 178–179 (N.D.1985) (uncounseled guilty plea without waiver of counsel); *State v. Smith,* 238 N.W.2d 662, 673 (N.D.1976) (pending criminal charge).

[¶ 36] In *Orr,* the sentencing court enhanced the statutory limits for the defendant's term of imprisonment based upon a prior uncounseled guilty plea for driving under the influence. *Orr,* 375 N.W.2d at 177–79. The increase in sentencing was based on the consideration that a second crime is more serious and requires a harsher punishment and therefore the statutory limits within which the sentence is determined increase. *Id.* at 177. The Court concluded an uncounseled conviction, without a valid waiver of the right to an attorney, is too unreliable to base enhancement of a term of imprisonment for a subsequent offense. *Id.* at 178–79. The issue in *Orr* was not whether the sentencing court relied upon an impermissible factor in sentencing the defendant within the statutory limits, but whether the statutory limits were enhanced based upon a prior uncounseled conviction.

[¶ 37] In *Smith,* the sentencing court discussed the defendant's pending criminal charges, but concluded it could not increase the defendant's prison sentence based upon a pending charge. *Smith,* 238 N.W.2d at 671. Smith argued the district court violated his constitutionally protected right to trial by jury on the pending charge. *Id.* This Court concluded the district court did not consider the pending charge, but if it had it would be an impermissible factor. *Id.* at 672–73.

[¶ 38] In this case, the district court considered the sentencing factors set out in N.D.C.C. § 12.1–32–04. In considering whether Hoverson made restitution to the victim under N.D.C.C. § 12.1–32–04(6), the court said:

If we look at just this case, that's not a factor but if I think I can make the leap of faith that in fact you engaged in an ongoing enterprise of sale of methamphetamine the way this stuff is packaged, and information that came in to the jury that this person had bought meth from you before and knew that you were one who sold meth. There may be a lot of damage to the community out there that we don't know about. I think I can take that into account.

Hoverson contends the district court relied on unproven conduct, which he argues is similar to a pending criminal charge or an uncounseled guilty plea and should also be considered an impermissible factor. We disagree.

[¶ 39] This Court has held a sentencing court may make reasonable inferences based upon evidence presented at trial, and those inferences may be a factor the court considers in setting the defendant's sentence within the statutory limit. *See State v. Steinbach*, 1998 ND 18, ¶ 24–26, 575 N.W.2d 193; *Bell*, 540 N.W.2d at 601.

[¶ 40] In *Steinbach*, the court heard evidence that the victim was abused by the defendant on multiple occasions over the course of their relationship up until the victim's murder. *Steinbach*, 1998 ND 18, ¶ 25, 575 N.W.2d 193. The court considered that evidence along with nine other factors during sentencing. *Id.* at ¶ 26. This Court held Steinbach failed to demonstrate the district court substantially relied upon an impermissible factor during sentencing. *Id.*

[¶ 41] In *Bell*, the court was presented with evidence including photographs and clothing suggesting Bell planned and prepared for his encounters with young girls, and other evidence that indicated Bell tried to enter the home of two other young girls who lived nearby. *Bell*, 540 N.W.2d at 601. During sentencing the prosecutor called Bell a predator; Bell argued the

court used that factor to support the sentence. *Id.* at 600. This Court held the evidence presented supported a reasonable inference that Bell was preying on young girls, and that reasonable inference was not an impermissible factor. *Id.* at 601.

[¶ 42] The *Bell* and *Steinbach* sentencing courts relied on evidence in the record and made reasonable inferences based upon that evidence. The sentencing courts heard testimony and were able to judge the reliability and credibility of the evidence the court used as the basis for its inferences. It is this distinction that separates these cases from *Smith*. This is not a sentence enhancement case like *Orr*, but is a case like *Bell* and *Steinbach* where the court relied on evidence admitted during the trial. The district court considered the evidence presented during the trial, including the confidential informant's testimony that he and Hoverson used a code to speak about drug transactions, inferring that the two had engaged in drug transactions in the past. Other evidence included the packaging of the methamphetamine in a small ziplock bag decorated with dollar bill signs. Based on this evidence, the court determined Hoverson was engaged in an ongoing enterprise of selling drugs. This was a reasonable inference based upon the evidence in the record and was a factor the court could consider during sentencing. The court also considered at least seven other factors in sentencing Hoverson, all of which are listed in N.D.C.C. § 12.1-32-04.

[¶ 43] Hoverson's sentence was within the range of sentences for a Class A Felony. *See* N.D.C.C. §§ 19–03.1–23 and 12.1–32–01. He has failed to show the district court substantially relied upon an impermissible factor in sentencing.

V

[¶ 44] We conclude: (1) Agent Marchus' conduct was not so outrageous as to bar prosecution of Hoverson; (2) the dis-

trict court interpreted Rule 608(b) too narrowly when it denied Hoverson's request to cross examine the confidential informant about the facts of the theft of property conviction, but the error was harmless; (3) the district court did not abuse its discretion in denying Hoverson the right to impeach the confidential informant through cross examination of specific instances of conduct; and (4) the district court did not rely upon an impermissible factor in sentencing Hoverson. We affirm the amended criminal judgment.

[¶ 45] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ, concur.